CASE 73—PETITIONS EQUITY—JUNE 13.

# Todd, Mayor, v. Dunlap et al.    Same v. Tilford et al.

APPEALS FROM JEFFERSON CIRCUIT COURT, THE FIRST NAMED FROM THE LAW AND EQUITY DIVISION AND THE OTHER FROM THE COMMON PLEAS DIVISION.

1. MUNICIPAL OFFICERS—REMOVAL OF BY MAYOR AND BOARD OF ALDERMEN.—The provision of section 160 of the Constitution of Kentucky that the General Assembly "shall prescribe the qualifications of all officers of towns and cities, the manner in and cause for which they may be removed from office," applies to all offices of towns and cities, whether created by the Constitution or the Legislature; and the Legislature, having fixed by the charter of cities of the first class (Sec. 2781, Ky. Stats.), the manner in which the officers of such cities may be removed, but failing to prescribe the cause for which it may be done, such cause must be such as constitutes misfeasance or malfeasance in office, or that character of charge which renders the officer unfit for the position; and the members of the Boards of Public Works and Public Safety, who are appointed for a definite term and at a fixed salary, can not be removed by the mayor or the Board of Aldermen, except for cause, and after notice and an opportunity to be heard.

2. SAME.—The provision in the charter of cities of the first class (Sec. 2794, Kentucky Stats.), giving the mayor the right "by a written order, giving his reasons therefor, to remove from office, any head of department, director, or other officer appointed by him," does not authorize the arbitrary removal of officers appointed for definite terms and at fixed salaries, without notice and opportunity to be heard. Such a construction would give to the mayor an arbitrary power to remove without a trial and without opportunity to be heard, these important municipal

officers—a thing never intended by the Legislature and in direct antagonism to the whole policy of the State.

A. BARNETT for appellant.

1. The statute gives the mayor the right "by a written order, giving his reasons therefor, to remove from office any head of a department, director or other officer appointed by him," and under that he has the absolute right to remove the appellees for any reason that is 'satisfactory to himself and approved by the Board of Aldermen. (South v. Commissioners, 86 Ky., 187.)

2. Section 160 of the Constitution, which provides that the General Assembly shall prescribe the qualifications of all officers of towns and cities, the manner in and cause for which they may be removed from office" applies only to offices created by the Constitution, and not to offices of legislative creation; and the appellees are in no wise affected by its provisions. (Smith on contracts; Parsons on Contracts, 6th ed., vol. 2, p. 501, note v; Bishop on Contracts, sec. 595; Pollock's Contracts, 409; Jarman on Wills, vol. 2, 395; Sedgwick on Construction of Law, 361; Wharton on Contracts; Story on Contracts, sec. 786; Waite's Actions and Defenses, vol. 1, p. 125; Kennedy v. Foster's ex'or, 14 Bush, 479; Bishop on Written Laws, sec. 245; Simons v. Johnson, 3 B. & Ad., 23, E. C. L. R., 175; State v. Marshall, 13 Tex., 55; Tarrance v. McDougall, 12 Ga., 526; Vaughan v. Porter, 16 Vt., 266; McDade v. People, 29 Mich., 52; Brooks v. Cook, 44 Mich., 617; People v. N. Y. & M. B. R. Co., 84 N. Y., 565; *In Re* Hermance 71 N. Y., 487; City of St. Louis v. Laughlin, 49 Mo., 559; Littlefield v. Winslow, 19 Me., 394; Grumler v. Webb, 44 Mo., 444; Pordus Appeal, 100 Pa. St., 408; White v. Ivy, 34 Ga., 186; McIntyre v. Ingram, 35 Mass., 25; U. S. v. Irwin, 5 McLean, 179; Chapman v. Forsythe, 2 How., 208; Black v. Delaware & Raritan Canal Co., 9 C. E. Green, 455; Lewis v. Smith, 9 N. Y., 502; Hawkins v. Great Western R. Co., 17 Mich., 57; Page v. Hardin, 8 B. M., 656.)

D. W. FAIRLEIGH, JOHN MARSHALL and H. S. BARKER on same side.

1. It is apparent from the whole charter for cities of the first class that the mayor was to be given absolute power over the executive boards at all times, as he was responsible for their appointment, and answerable to the people, who elected him, for the proper administration of their various duties.

Todd, Mayor, v. Dunlap et al.;

2. It is well established that as to officers not constitutional, but wholly the creatures of statute, the legislature has plenary power to provide their qualifications and the manner of their removal, be the removal with or without cause, with or without notice and hearing. (South v. Commissioners, 86 Ky., 186.)

3. Because there must be a *cause of removal*, there is not necessarily a limitation upon the *power* of removal. The *cause* intended may be only such as is satisfactory to the party exercising the power. (City of Hoboken v. Gear, 3 Dutcher (N. J.), 265.)

4. Where the law authorizes the mayor to remove municipal officers, his judgment is final and conclusive, and can not be inquired into by the courts in the absence of a provision of the law authorizing such inquiry. (Throop on Public Officers, sec. 396; People v. Stout, 19 How., Pr. (N. Y.), 171; People v. Barfield, 35 Barb. (N. Y.), 254; Patton v. Vaughan, 39 Ark., 211; U. S. v. Oliver, 6 Mackey (D. C.), 47; Oliver v. Americus, 69 Ga., 165; State v. Ramos, 10 L. A. Ann., 420; State v. Doherty, 25 La. Ann., 119; Hamtrack v. Holihan, 46 Mich., 127; Hoboken v. Gear, 27 N. J. L., 265; State v. Hawkins, 44 O. St., 98.)

PIRTLE & TRABUE and HUMPHREY & DAVIE for appellees.

1. If section 32 of the city charter (Ky. Stat., sec. 2794) be construed as authorizing the mayor to remove the members of the boards of public works and public safety without cause, hearing, or trial before a duly authorized tribunal, with judicial powers to try such officers, then it violates section 160 of the new Constitution, and is void. (Kentucky Constitution, sec. 160; Kentucky Statutes, secs. 2794, 2784, 2802, 2861, 2824; Dillon on Municipal Corporations, 4th ed., secs 240, 250, 255; Mechem on Public Officers, secs. 445, 455; Hallgren v. Campbell, 21 Amer. State R., 555 (82 Mich., 255); Speed v. Council of Detroit, 97 Mich., 198 (56 Northwestern, 570); Lease v. Freeborn, 53 Kansas, 750 (35 Pac. R., 817); Amer. and Eng. Ency. Law, vol. 19, p. 562f; Collins v. Tracy, 36 Tex., 546; Rex v. Richardson, 1 Burrows, 517; "James Baggs' Case," 11 Coke's Rep., 98; Field v. Comm., 32 Pa. St., 485; State v. Police Commrs., 14 Mo., Apps., 306; State v. Smith, 35 Neb., 33 (52 N. W., 700); Speed v. Detroit, 39 Amer. St. R., 563 (98 Mich., 371); People v. Jewett, 6 Cal., 291; State v. Chatburn, 50 Amer. Rep., 760 (63 Ia., 659); Williams v. Commonwealth, 79 Ky., 42, 47; Cooley's Const. Lim., 6th ed., p. 78; Lowe v. Comm., 3 Met. (Ky.), 241; Brown v Grover, 6 Bush, 1; Page v. Hardin, 8 B. Mon., 661, 672, 677; Dallam v. Wilson, 53 Mich., 392 (51 Amer. Reps., 128); Lease v. Freeborn, 52 Kansas, 750 (35 Pac., 818);

State v. Walbridge, 41 Am. St. R., 670 (119 Mo., 383); State v. Duluth, 39 Am. St. R., 598 (53 Minn., 238); People v. Fire Commrs., 72 N. Y., 455; State v. Brown, 57 Mo. Apps., 199.)

2. Said section 32 (Ky. Stats., sec. 2794), (authorizing the mayor arbitrarily, causelessly, and without trial, to remove certain officers), properly construed, does not apply to these higher executive boards. (Ky. Stats., secs. 2793, 2794, 2784, 2802, 2861, 2898, 2801, 2861, 2810, 2865, 2866, 2825, 2897, 2898, 2815, 2816, 2823, 2807, 2804, 2781, 2789, 2788; Burnett's City Code of 1884, p. 325, sec. 41; Hallgren v. Campbell, 21 Amer. St. R., 561 (82 Mich., 255); Jacques v. Little, 51 Kansas., 300 (33 Pac., 107); State v. Chatburn, 50 Amer. Reps., 760 (63 Ia., 659); Page v. Hardin, 8 B. Mon., 672, 677; Dallam v. Wilson, 51 Amer. Reps., 128; Metsker v. Nealy, 13 Amer. St. Rep., 269 (41 Kansas, 122); Barbour v. City of Louisville, 83 Ky., 100; Endlich on Interpretation of Statutes, sec. 412; Bishop on Written Laws, sec. 246b; People v. McAllister, 37 Pac. Rep., 581 (10 Utah, 357); Sedgwick on Statutory Construction, p. 361; Keenan v. Goodwin, 17 Rhode Island, 649; Jackson v. People, 77 Amer. Dec., 491; Speed v. Council, 97 Mich., 198 (56 N. W., 574.)

CHIEF-JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

The board of public safety and the board of public works, executive boards of the government of the city of Louisville, instituted these actions in equity in the court below, in which it is alleged the mayor and board of aldermen were about to remove the members constituting the two boards from office without cause, and the sole question in each case is: "Has the mayor the power, with the approval of the board of aldermen, to remove these officials without notice and trial, and without assigning any cause for their action?"

The judge of the law and equity court decided the one case, and the judge of the common pleas court the other, each holding the mayor had no such power.

These executive boards, composed of three members each, are appointed by the mayor, with the approval of the aldermen, for a term of four years, with a salary each of not less than $2,500. The board of public works are invested with

the control of all the public ways of the city—the construction of streets and their reconstruction; the supervision of the public buildings; the lighting of public places, with the power of contracting with reference to such matters, and in fact with powers unlimited in this regard, subject to the supervision of the mayor, and when not in conflict with the organic law of the city.

To the board of public safety is given the exclusive control, under the ordinances of the council, of the fire department, the police department, the health department, the department of building, of all the charitable, reformatory and penal institutions of the city, with many other powers given by statute, investing the two boards with the execution and control of nearly all the departments of the city government, and to carry into effect the legislation of the municipality.

They are the creatures of the legislature, and their terms of office, as is contended, may be ended at the legislative will. They have neither a freehold in their offices nor a vested right that places their official existence beyond legislative control, yet they are officers of the city, with a responsibility and duty resting upon them that renders their position as important as any other in the conduct of the municipal government.

Section 160 of the State Constitution is as follows: "The mayor or chief executive, police judges, members of city councils of towns and cities, shall be elected by the qualified voters thereof, provided the mayor or chief executive and police judges of towns of the fourth, fifth and sixth classes may be appointed or elected, as provided by law. The terms of office of mayor or chief executive or police judges shall be four years, and until their successors be qualified, and of members of legislative boards two years.

When any city of the first or second class is divided into wards or districts, members of legislative boards shall be elected at large by the qualified voters of said city, but so selected that an equal proportion thereof shall reside in each of said wards or districts; but when in any city of the first, second or third class, where there are two legislative boards, the less numerous shall be selected from and elected by the voters at large of said city, but officers of towns and cities shall be elected by the qualified voters therein, or appointed by the local authorities thereof, as the General Assembly may by a general law provide; but when elected by the voters of a town or city their terms of office shall be four years, and until their successors shall be qualified. No mayor or chief executive or fiscal officer of any city of the first class, after the expiration of the term of office to which he has been elected under this Constitution, shall be eligible for the succeeding term. Fiscal officers shall not include auditor or assessor, or any other officer whose duty is not the collection of or holding of public moneys. The General Assembly shall prescribe the qualifications of all officers of towns and cities, *the manner in and cause for which they may be removed from office*, and how vacancies in such offices shall be filled."

It is claimed by counsel for the two boards that under this provision of the Constitution the Legislature must prescribe the manner in and the cause for which city officials may be removed, and the legislature having failed to comply with the Constitution in this regard the common-law rule must prevail, and the party sought to be removed is, therefore, entitled to notice of the charges against him and to a hearing in his defense, and by the appellant (the mayor) it is insisted this provision of the Constitution does not embrace or affect any officer of a town or city except those especi-

ally mentioned in that section, and its operation confined to the officers therein named.

It must be readily seen by a casual reading of this section that many of the most important offices connected with a city government, and indispensable to its existence, are omitted to be mentioned in the section of the Constitution referred to, and the creation of such offices confided by that instrument to the wisdom of the legislative branch of the government, with the duty of prescribing their qualifications, and the cause or causes for which they may be removed.

The mayor, police judges and members of legislative councils of cities of the first, second and third classes must be elected by the people, and like officers of towns and cities of inferior classes may be appointed or elected as provided by law; and in the same section, after defining the mode in which these constitutional officers are to be chosen, and knowing that other officers must of necessity be created, further provided: "But other officers of towns or cities shall be elected by the qualified voters therein, or appointed by the local authorities thereof, as the General Assembly may by a general law, provide; but when elected by the voters * * * their terms of office shall be four years, and until their successors are qualified," and concluding the section by vesting in the legislature the power to prescribe the qualifications of all officers of towns and cities, the *manner in and cause for which they may be removed from office*, the provision evidently applying to all officers of towns and cities, whether created by the Constitution or the legislature, and in carrying into effect this provision of the Constitution in regard to removal from office the General Assembly enacted, under the title of Municipal Corporations, the following:

"Section 2781. Executive and ministerial officers, unless otherwise provided in this act, shall be removable by the board of aldermen, sitting as a court, under oath or affirmation, upon charges preferred by the board of councilmen. No person so charged shall be removed from office without the concurrence of two-thirds of the aldermen, and when a person has been so removed from office he shall be ineligible thereto during the term for which he has been elected."

This provision of the statute is sufficiently comprehensive to embrace every city officer; and, although the charges for which the removal may be made are not specified, they must be such as constitute misfeasance or malfeasance in office, or that character of charge that renders the officer unfit for the position.

The contention of the appellant is that by a subsequent section of the statute on municipal corporations the manner of removing the members of these two boards has been *otherwise provided by law.* That section reads: "He (the mayor) may, by a written order *giving his reasons therefor,* remove from office any head of department, director or other officers appointed by him. A copy of said order shall be sent to the board of aldermen at its next meeting. Unless such order be disapproved by the board of aldermen within thirty days said order shall stand." (Section 2794.)

These officials having been appointed by the mayor, it is urged in his behalf that any reason satisfactory to himself, and approved by the board of aldermen, is a compliance with the statute, and that no limitation on this power of removal exists when applied to those officers holding under his appointment, and however competent and faithful they may be in the discharge of their duties, their positions are held at the mere will of the chief executive.

Todd, Mayor, v. Dunlap et al.

Counsel for the appellees maintain they are not heads of departments or such appointees of the mayor as are embraced by section 2794.

That they are placed on a level with the mayor in regard to executive duties, and while they are subordinate in some particulars to the mayor, their executive powers are greater than his.

While conceding the force of the arguments, we are disposed to determine this issue on other grounds, and, for the purpose of this case, will assume they come within its provisions.

The case of South v. Sinking Fund Commissioners, 86 Ky., 186, is relied on as sustaining the power of the mayor in the present case. In that case it will be found the statute in express terms placed the power of removal *within the discretion* of the commissioners. It provided: "The said commissioners shall *have power at their discretion* to remove any warden unless the General Assembly should refuse to concur in their action, etc." No reasons for removal were required to be given, nor was there any constitutional prohibition to the removal without cause.

In the absence of a constitutional inhibition an office created by the legislature in a municipality might, by the terms of the act creating it, vest the power in the mayor to remove without cause, leaving the reasons for the removal within his own breast. This is not denied.

Mechem, in his work on Public Offices, says: "Where, therefore, the term of office *is not fixed by law,* and no other provision is made for removal, either by Constitution or statute, it is said to be a sound and necessary rule to consider the power of removal as incident to the power of appointment, but this power of removal is limited to these cir-

cumstances; and if the term is fixed by law, or if the officer is appointed to hold during the pleasure of some other officer or board than that appointing him, the appointing power can not arbitrarily remove him." And it might be said that where the term is fixed the power to remove at will might be added, for, in the absence of any constitutional prohibition, the power of the legislature in this regard is not to be restricted.

Our attention has been called to the case of The People v. Stevenson & Higgins, 15 Ills., 110, as sustaining the contention of the appellant. In that case the act created the Illinois Hospital for the Insane, and authorized the trustees to appoint a medical superintendent, subject to removal only *for infidelity to the trust reposed in him.* There was no mode of proceeding in such cases provided by the Illinois statute, and the trustees, being satisfied of the incompetency of the appointee, removed him without notice or trial. It was held that this power was with the trustees, and the opinion based principally on the ground of the necessity for prompt action on the part of the trustees, the court saying: "Circumstances may require, and even the very existence of the institution may demand the most prompt and energetic action on the part of the trustees in the removal of the superintendent, and the law did not design to leave them powerless to act in such an emergency; and the law being silent as to the manner of proceeding, the nature of the case must determine what course of justice the trustees should pursue in exercising the power of removal."

That case can be easily distinguished from the case before us; but even in such case, in a well-considered case of Lease v. Freeborn, 52 Kansas, 750, a different rule prevailed. The plaintiff in that case, Mary Lease, was a member of the

Todd, Mayor, v. Dunlap et al.

State Board of Charities, and was removed without cause, or at least without notice or trial. The Constitution of Kansas provided: "The term of any office not herein provided for may be declared by law; when not so declared such office shall be held during the pleasure of the authority making the appointment."

A statute of that State subsequently passed declared that the terms of office of the trustees should be three years. The statute was silent as to any cause of removal, notice or trial, and the court held: "The mere silence of the statute, with respect to notice and hearing, will not justify the removal of an officer, whose term is declared by law, without knowledge of the charges, and an opportunity to explain his or her conduct, and defend his or her course and character."

It is urged, however, in this case that the cause of removal (the statute being silent on the subject) is with the mayor and the board of aldermen, and no court can supervise their action.

That the Constitution having required the Legislature to prescribe the causes, and that body having failed to comply with its provisions, the power of removal becomes discretionary with the mayor and board, and the cases of The People v. Stout, 19 Howard (N. Y.), 171; the Mayor and Council of Hoboken v. Gear, 27 N. J. Law, 265, and People v. Whitlock, 92 N. Y., 191, as well as other cases, are referred to as sustaining this view.

It was held in the case of The People v. Stout that the exercise of such a power (removal for cause) "is judicial in its nature, and, therefore, not the subject of review by any other tribunal, either in respect to the cause, its sufficiency or existence in any respect whatever."

In the case of The Mayor v. Gear it was held that although

the appointment to the office was a *fixed term* and the removal for cause, it meant only such cause as was satisfactory to the council.

Other cases follow the authorities referred to, some of them holding (and to which we assent) that the legislature when not forbidden by the organic law, having been given the authority to create an office for a term, may, if in express terms, authorize the removal of the incumbent without notice or hearing.

In looking to the doctrine on the question of the *removal* from office found in the elementary books, as well as the weight of authority in the adjudged cases, we are not disposed to recognize the rule contended for by the appellant in the construction of our State Constitution or the statute creating municipal offices. The general power to remove an officer who holds for a definite term carries with it the power to remove for cause upon notice and trial, and it is only in cases where this power to remove without a trial is expressly given that it can be exercised. This doctrine is elementary, and sustained by the decided weight of modern authority.

In the case of The State *ex rel* v. Dennison, 90 Mo., 19, a police justice had been appointed by the council, and confirmed by the mayor, for the term of four years. The validity of his removal was tested. The charter was silent as to notice and trial where one had been appointed to office, but it did require a notice and hearing to those who had been elected to office.

It was contended that inasmuch as the charter required notice to elective offices before removal, it must negative the idea that any notice was required to be given appointed officers. The court held that no inference dispensing with notice arose from the failure of the charter to require it; and

Todd, Mayor, v. Dunlap et al.

further, that the removal of the justice without an oppor-
tunity to be heard was invalid. (State v. Brown, 57 Mo.,
179.)

In the case of Halgreen v. Campbell, 82 Mich., 255, the
charter of the city of Menominee prohibited, in express
terms, the removal of elective officers except for cause, and
it was argued in that case the presumption must follow the
legislature intended that appointed officers should be re-
moved without cause, or at the pleasure of the appointing
power, but the court held that no such presumption would
be indulged to enable those in power to exercise such arbi-
trary power, and the appointee was entitled to be heard.

In the case of Speed v. Common Council of Detroit the
office of city councillor was filled by appointment from the
mayor for a fixed term, and the charter of that city provided:
"Any officer holding office by appointment, *unless otherwise
provided by law or ordinance*, may be removed at any time by
the council without charges and a trial thereof, by a vote of
a majority of the members-elect, except the comptroller, re-
ceiver of taxes, etc." The appointee was not within the ex-
ception. The court held that such power was inconsistent
with the power of appointment by the mayor for a fixed term,
and, therefore, the removal was invalid, the officer being en-
titled to notice and an opportunity to be heard.

The court in that case referred to the case of *ex parte*
Hennen, 3 Pet., 230, in which it is said: "We have not
found any case where an officer who was appointed for a fix-
ed term, and where the power of removal was not expressly
declared by law to be discretionary, has been held to be re-
movable except for cause;" and when cause is to be assigned
the party is entitled to an opportunity to be heard.

But it is further contended that the legislature, by sec-

tion 2794 of the Kentucky Statutes, applying to the cities of
the first-class, has given the express power of removal with-
out cause, and for any reason the mayor might suggest, if
approved by the board of aldermen.  We can not assume
that this is the legislative meaning of that section, or that
such a construction should be given it, or that the exercise
of such an arbitrary power arises by implication.

The members of these executive boards carry into execu-
tion nearly the entire legislation of the municipal govern-
ment, and are entrusted with the performance of duties re-
quiring the exercise of the highest judgment and the assump-
tion of grave responsibilities.  They are appointed for the
fixed term of four years, with a salary commensurate with
the duties they are to discharge, and to concede the power
of the mayor to expel these boards from office with or with-
out cause, in the absence of a trial or an opportunity to be
heard, would be to recognize the existence of an arbitrary
power that never entered the mind of the legislature, and in
direct antagonism with the entire policy of the State in ref-
erence to such officials.

The legislature, in failing to comply with the provision of
the Constitution, in not assigning causes for removal of city
officials, attempted to transfer the exercise of this legisla-
tive power to the mayor, and left with that officer and the
board of aldermen the right of determining *the reasons* for
which the members of these boards should be removed, and
if such a power could be delegated (and we think it could
not) a removal *for reasons given* must be based on some neg-
lect of duty or the want of capacity to conduct the office,
or such other causes as unfit the member for holding the
place.

If the legislative purpose had been to give the power to

the mayor to remove at pleasure, with no constitutional provision against its exercise, they would have said so, for in sections of the same general act the power to remove at pleasure is given in express terms, and when empowering the mayor to remove for *reasons given* the legislative meaning was a removal *for cause*—for legal reasons, based on a sufficient cause—and when removed for *reasons given* or for cause the party is entitled to a hearing, and to be proceeded against as provided in section 2781 of the chapter on Municipal Corporations.

The act also under which this power is claimed plainly indicates the legislative policy as to the removal of the city officials, and goes so far as to require the board of safety, when investigating charges against the members of the police force, its own appointees, to give *reasonable notice* to the accused, that he may be heard; and yet it is attempted to be maintained that these executive officers, because they were appointed by the mayor, can be removed for any cause, however trivial, or for charges odious and degrading without the opportunity of making defense and of disproving the charges made.

We can not assent to the exercise of such a power, and the necessity for some stability, and independence in the discharge of the important trusts confided to these executive boards is of itself a convincing argument against the contention of the appellant, and aids much in the construction of the statute from which it is argued this arbitrary power flows.

In the case of Mindy v. Board of Fire Commissioners of the City of New York, the charter of that city declared that "the power of removal by the commissioners could not be exercised as to any regular clerk until he has been informed of the cause of the proposed removal."

The clerk was removed after notice, and without cause, and then a second notice given, and the cause assigned was that "the duties of the position could be better performed by some one else." It was held the provision of the charter necessarily implies the cause of removal must be for some neglect of duty or some delinquency affecting the general character of the one sought to be removed, and that some other person *could more* efficiently perform the duties was not sufficient.

It may be contended the legislature by section 2794 intended the removal from office by the appointing power, for either a fixed or indefinite term of the appointee, should be for a less cause than that authorizing an impeachment; and while this is no doubt true, still the cause was not prescribed, and when for a fixed term, unless otherwise expressly provided, the party sought to be removed is entitled to be heard, and the attempt to confer the power (if such was the proper construction of the statute) on the mayor to remove, with the consent of the aldermen, without trial or an opportunity to be heard is a nullity.

"Where the officer is appointed for a fixed term, and removable only for cause, he can be removed only upon charges, notice and an opportunity to be heard." (Throop on Public Officers, page 364.)

This rule is fundamental, and as both the Constitution and the legislature are silent as to the cause for removal the delinquent officer may be impeached before the aldermen with notice and that as at the common law. That the legislature intended to place a limitation on the power of the mayor to remove these officials, if embraced by the section referred to in requiring *reasons to be given*, is unquestioned, as well as for the purpose of protecting those who are com-

petent to fill the position, and who faithfully and honestly discharge their duties; and there is but little protection when the opportunity to be heard is denied.

The judgment in each case is affirmed.

Judge Guffy delivered the following separate opinion:

I concur in the affirmance of the judgments, but dissent from the reasons given in the opinion.

It seems to me that the legislature, under section 160 of the Constitution, has plenary power as to the manner of and cause for which city officers may be removed, and it is within the power of the legislature to authorize the mayor to remove the officers mentioned for any cause or reason to him deemed sufficient, although such cause or reason might not imply either malfeasance, misfeasance or incompetency, and that, too, without notice or hearing; but the power of removal given in section 2794 of the Kentucky Statutes does not clearly include the power to remove the officers in question.

Judge DuRelle delivered the following dissenting opinion:

I dissent from the opinion of the majority in these cases. In my opinion the act for the government of cities of the first class was intended to effect a departure from the character of municipal government which had theretofore prevailed.

A consideration of the whole act shows that it was intended to provide a responsible head of the executive department of the city government, accountable to the people at the polls, and that the subordinates of that department should be responsible, directly or indirectly, to the head. While the act is in terms a general act, there was but one city to which it could apply, and a comparison of its provisions with those of the old city charter leads inevitably to the conclusion that a change was intended whereby greater power. and, at the

Vol. 99—30.

same time, greater responsibility should attach to the office
of mayor. Without attempting to state in detail the argu-
ment which might be made on this question, I shall give
briefly my conclusions.

The mayor, who is the head of the executive department
of the city government (section 23), appoints the executive
boards, which are subordinate departments or branches of
the executive, although not called departments in the stat-
ute (section 40). The boards in turn are empowered to ap-
point the heads of subordinate executive departments (sec-
tion 48), and they also employ or appoint subordinate ex-
ecutive employes and officers (sections 41, 47, 100).

It is made the duty of the mayor to be vigilant and active
in causing the ordinances of the city and the laws of the
State to be enforced (section 29). He is required to "exer-
cise a general supervision over all the executive and minis-
terial officers of the city, and see that their official duties are
honestly performed. He may require from them statements
in writing concerning the discharge of their duties" (section
31). He may appoint persons "to examine, without notice,
the affairs and accounts of any city department, trustee,
officer or employe, . . . and to report to him the re-
sults of such investigation."

If these powers were all that were attached to the office of
mayor, he would be helpless to perform the duties required
of him. In what way could he be vigilant and active in
causing the ordinances of the city to be enforced if the
boards of his appointment, creatures of his creation, were
turned upon confirmation into a set of Frankenstein mon-
sters, who could set him at defiance? How could he exercise
a general supervision over all the executive and ministerial
officers of the city, and see that their official duties are hon-

estly performed, if those officers are responsible alone to a tribunal over which he has no control, though appointed by him and sharing his executive powers? What sort of statements in writing concerning the discharge of their duties might he expect from members of the boards who share his powers, and, because it was supposed that they were responsible to him, have been given greater powers than those granted to him? What benefit would he derive from statements of subordinate officials, heads of inferior departments, etc., who are responsible alone to independent and perhaps hostile tribunals? With what obstructions, tangible and intangible, would the examiners appointed by him meet in investigating the affairs of a city department over which he could exercise no control, or of an officer who owed allegiance to a different chief?

Again (section 52), authority is given to refer any matter in dispute as to the powers or duties of said boards or the officers thereof to the mayor, who shall examine and determine the questions involved, and whose decision shall be final as between said boards or said officers. There would be little prospect of a reference of any matter in dispute to the mayor, if the boards are entirely independent of his control.

By section 107 it is provided that "in times of peril from riot, extensive conflagration, disorder, or the apprehension thereof, the chief of police shall be subordinate to the mayor, and obey his orders and directions." With the chief of police subject to removal at pleasure by the board of safety, and with the board of safety entirely independent of and hostile to the mayor, who is to determine whether peril from riot, disorder, or the apprehension thereof, exists, and which of his two masters will the chief of police be likely to serve under such circumstances—the one who has no power over

him or the one which can decapitate him at pleasure?

The provision for written charges against and trial of policemen before their removal from the force, upon which some stress has been laid in argument, was not part of the original act, and no argument can justly be drawn from it as to the intent of the original act, or the intent of any part of it not affected by the amendment. This amendment( section 2, act of March 23, 1894) was passed, so far as can be inferred from its provisions, as a civil service reform measure designed to take the police force out of politics. The suggestions which have been given, and many more which might be drawn from the provisions of the act, indicate clearly that the intent of the legislature was to adopt the theory which has in modern times become the accepted theory of municipal government, that there should be a responsible head of the municipal executive, and that he should be clothed with authority commensurate with his responsibility.

The modern theory has been well expressed by Judge Cooley: "Experience has also demonstrated the necessity of more power and more responsibility in the executive head of our municipal institutions. Too often the duties of the mayor or executive officer are only nominal, and to these he gives but little attention—a natural result of his want of importance, and of his inability to control the administration of municipal affairs. If the office be clothed with dignity and real authority; if the mayor shall be invested with the veto power; if he shall have the sole right to appoint and the unrestricted power to suspend or remove subordinate officials or heads of departments, then the citizens can justly demand of him that he shall be individually responsible for the proper conduct of the concerns of the municipal-

ity, and, if grievances exist, they will know to whom to apply for remedy or upon whom to fix the blame."

It is not necessary to suppose that the legislature had the present condition of affairs in mind in passing the act, though it is to be presumed that they considered the contingency of the death or resignation of the mayor during his term. What they probably had mainly in view was the contingency which was to be expected, namely, that the mayor and the boards of his appointment might differ in their views of what was necessary for the proper conduct of the city government, or might become engaged in a quarrel over personal matters; and so the purpose of the legislature being clearly deducible from the act itself, the question remains whether apt language was used to express that intention, and, if so, whether the constitution gave the right to effect the object.

Section 32 provides: "Removal of officials appointed by the mayor. He may, by a written order giving his reasons therefor, remove from office any head of a department, director or other officer appointed my him. A copy of said order shall be sent to the board of aldermen at its next meeting. Unless such order be disapproved by the board of aldermen within thirty days said order shall stand."

It is contended for the boards that this section does not include them upon the ground of the rule of construction "that a statute which enumerates persons or things of an inferior rank, dignity or importance is not to be extended by the addition of general words to persons or things of a higher rank, dignity or importance than the highest enumerated, if there are any of a lower species to which the words can apply." (Black on Interpretation, 145.)

While this rule of interpretation is most generally in-

voked to prevent the application of a penal statute, in this case it can have no application, for the members of the boards are themselves, within the meaning of the section, heads of departments. Their duties are prescribed by the charter and their departments are subdivided into other departments—as the police and fire—whose heads are appointed by the boards; yet the two great divisions, though not called "departments" are none the less so, and the members of the boards are none the less heads of them. It might as well be said that the mayor is not the head of the executive department of the city government. Moreover, the boards are the only heads of departments to which the legislature can be presumed to have intended the language to apply, for they are the only heads of departments (unless we may call the comptroller's office a department) "appointed by him."

It remains to be considered whether the removal provided for by section 32 was forbidden by section 160 of the Constitution. That section, after providing specifically for certain-named officers of municipalities, and thereby creating what was never known to any former Constitution, namely, constitutional municipal officers, fixing their terms of office and the manner of their selection under various conditions, proceeds: "The General Assembly shall prescribe the qualifications of all officers of towns and cities, the manner and causes for which they may be removed from office, and how vacancies in such offices may be filled."

That section is susceptible of two interpretations: One, that the concluding clause referred only to those municipal offices which were mentioned in the Constitution—that is, to the constitutional municipal offices—and has no application to municipal offices which are the mere creatures of the legislature. The other construction is that the section was

intended to be permissive; to enlarge the power of the legislature as to offices which had been made constitutional by the new Constitution, and to give to the legislature a power which it otherwise would not have had, inasmuch as the offices had been made constitutional; and in the construction of the constitutional provision the language should be interpreted in its natural sense as it was understood by the people who voted for it.   It is difficult to suppose that the average voter, in considering the section which gave the legislature power to provide the manner in and causes for which officers might be removed from their offices, understood or intended that those causes were limited to such as were at common law grounds for impeachment.

In theory Constitutions are made by the whole people. In actual practice they are submitted to them for ratification, and the words used are to be given their common meaning, and not to be construed technically.   It must be remembered that under the former Constitutions it was well established and undisputed that the legislature was without power to provide qualifications for constitutional officers in addition to the qualifications provided in the Constitution, or to provide for their removal for any cause other than the causes recognized by the common law at the time of the adoption of the Constitution, or to provide any manner of removing a constitutional officer except upon notice and hearing. (Page v. Hardin, 8 B. Mon.: 648.)

On the other hand, prior to the adoption of this Constitution, it was equally well settled that as to officers which were not constitutional but wholly statutory, the legislature had full power to provide their qualifications and the manner of their removal whether the removal was to be with or

without   cause, or with or without notice and   hearing. (South v. Commissioners, 86 Ky., 186.)

Before the adoption of the present Constitution the legislature was omnipotent as to municipal government and municipal officers, and when the new Constitution was adopted, which created certain constitutional municipal offices, a wise provision was inserted to prevent those new constitutional offices becoming subject to the then established rule of law; and the language of this provision must be construed according to its common meaning.

"In interpreting clauses we must presume that the words have been employed in their natural and ordinary meaning. As Marshall, chief justice, says: 'The framers of the Constitution and the people who adopt it must be understood to have employed words in their natural sense, and to have intended what they have said.' This is but saying that no forced or unnatural construction is to be put upon their language; and it seems so obvious a truism that one expects to see it universally accepted without any question; but the attempt is made so often by interested subtlety and ingenious refinement to induce the courts to force from these instruments a meaning which their framers never held, that it frequently becomes necessary to re-declare this fundamental maxim.   Narrow and technical reasoning is misplaced when it is brought to bear upon an instrument framed by the people themselves for themselves, and designed as a chart upon which every man, learned and unlearned, may be able to trace the leading principles of government."   (Cooley's Constitutional Limitations, 6th ed., p. 73.)

In my judgment the constitutional provision is a wise one, and section 32 of the act under consideration was adopted in accordance with the purpose of the constitutional provi-

sion, which was intended to be permissive and not restrictive upon the power of the legislature.

In passing upon its validity this court should be guided by the well-settled rule of statutory construction which is thus stated by Judge Cooley in his work on Constitutional Limitations: "It has been said by eminent jurists that when courts are called upon to pronounce the invalidity of an act of legislation, passed with all the forms and ceremonies requisite to give it the force of law, they will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light upon the subject, and never declare a statute void unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt. A reasonable doubt must be solved in favor of the legislative action, and the act be sustained.

"The question whether a law be void for its repugnancy to the Constitution is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station could it be unmindful of the solemn obligation which that station imposes; but it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other.

"Mr. Justice Washington gives a reason for this rule which has been repeatedly recognized in other cases which we have cited. After expressing the opinion that the particular question there presented, and which regarded the

constitutionality of a State law  as involved in difficulty and doubt, he says:  'But if I could rest my opinion in favor of the constitutionality of the law on which the question arises on no other ground that this doubt so felt and acknowledged, that alone would, in my estimation, be a satisfactory vindication of it.   It is but a decent respect due to the wisdom, the integrity and the patriotism of the legislative body by which any law is passed, to presume in favor of its validity until its violation of the Constitution is proved beyond all  reasonable  doubt.'"  (Cooley's Constitutional Limitation, 6th ed., p. 216.)