CASE 82—MANDAMUS—FEB. 15.

## Johnson, Etc. v. Ginn & Co

* APPEAL FROM LAUREL CIRCUIT COURT.

1. COMMON SCHOOLS—TEXT-BOOKS—POWER OF COUNTY BOARD OF EXAMINERS.—The county board of examiners has no power to adopt as text-books for the common schools of the county any books not filed in the office of the Superintendent of Public Instruction pursuant to the provisions of sec. 4424 of the Kentucky Statutes.

2. SAME—COUNTY BOARD—POWER OF COUNTY SUPERINTENDENT TO REMOVE.—The county superintendent has power to remove his associates from the county board without notice or the assignment of any cause.

HAZELWOOD & PARKER AND STILLINGS & JOHNSON, FOR THE APPELLANT.

1. The demurrer to the petition should have been sustained. Bliss on Code Pleadings (3d ed.) sec. 448; Maxwell on Code Pleadings, p. 237. The petition raises a doubt on its face whether the text-books had been legally adopted. Lowe v. Phillips, 14 Bush, 642; Ky. Stats., sec. 4424; Atchison, County Judge, v. Lucas, Duncan v. Same, 83 Ky., 451; Merrill on Mandamus, 56.

2. There was a defect of parties plaintiff; the action should have been in the name of some one of the patrons of the common schools of Laurel county, Kentucky. Civil Code, secs. 18, 25, 92; Maxwell on Code Pleading, 373; Newman's Kentucky Pleadings & Practice, p. 658; Story's Equity Pleading, sec. 543.

3. It was error on the part of the circuit court to permit parts of the second paragraph to be stricken out and sustaining a demurrer to the remainder of said paragraph. Maxwell on Code Pleading, sec. 448; Merrill on Mandamus, sec. 66; Effingham v. Hamilton, 10 Sou. Rep., (Miss.), 39.

4. The act under which the Board of Examiners is created is unconstitutional because it fails to fix the term for which such board is to hold. Constitution, sec. 23; Worthington v. Crawford, 3 Met., 213. Wherever the power of appointment is conferred in general terms, as is done by this section (4422), the power of removal is in the discretion and at the will of the appointing power and always exists unless restrained by some provision of law. People v. Robb, 126 N. Y., 180; Kelly v. New York, 59 N. Y., 156; People v. New York, 2 N. Y., 491; Kuna v. Pevey, 24 Tenn., 253.

JOHN L. SCOTT, ALSO FOR THE APPELLANTS.

1. Where the petition alleges a material and jurisdictional fact without which the suit could not be maintained; and the answer denies the existence of such fact; and there is a total failure of proof to establish such material issue, the petition should be dismissed.

2. The Legislature has the power to pass an act fixing the amount of the bond to be given by school book publishing houses, and to prescribe that the sureties on such bonds shall be residents of Kentucky, so that the courts may be able to guard the school-fund, and protect the patrons and pupils of the schools by having some responsible person within the jurisdiction of the

courts in cases where frauds and imposition have been perpetrated on the schools.

3. It is unlawful for any county board of examiners to adopt the books published by any publishing company until after such bond has been given by the publishing company "with good security resident in this State." Ky. Stats., sec. 4424.

4. The pretended adoption of a list of school books on the 14th of September, 1896, was a void and unlawful act because the lawful bond of the publishing company had not been then given, or if given, it had become void by the addition of other books afterwards, and such void act of adoption could not be ratified thereafter—it was not the subject of ratification. Thompson v. Warren, 8 B. M., 491.

5. The bond of August, 1893, to which new books and therefore new obligations were afterwards added without the knowledge or consent of the sureties, was void, and did not authorize the adoption of any books named either in the original bond or in the list of books so added thereto.

BECKNER & JOUETT, FOR THE APPELLEES.

1. What is a legal adoption of text-books for common schools?
2. What is a sufficient publisher's bond?
3. Is the execution of a publisher's bond directory or mandatory?
4. The power of the county superintedent to remove the examiners.

Citations: Gen. Stats., (Ed. 1888) p. 1148; Senate Journal, April 20, 1892; House Journal, Nov. 23, 1892; Ky. Stats., secs. 4423, 4424; Black on Interpretation of Statutes, 333; Sutherland on Construction of Statutes, 447; State Board of Pharmacy v. White, 84 Ky., 626; Rodman v. Justice of Larue Co., 3 Bush, 145; Anderson Co. v. Stone, 18 B. M., 852; Speed & Worthington v. Crawford, 3 Met., 207; Todd, Mayor, v. Johnson, &c., 18 Ky. Law Rep., 354.

HAZELWOOD & PARKER AND STILLINGS & JOHNSON, IN REPLY.

Additional citations: Re Bulger, 45 Cal., 553; Wait's Actions and Defenses, vol. 5, p. 12; Collins v. Tracy, 36 Tex., 546; Newcom v. Cocke, 44 Miss., 352; South v. Commissioners, 86 Ky., 457; Todd, Mayor, v. Dunlap, 99 Ky., 457; Webster's International Dictionary, p. 880; School, English, by Geo. P. Butler, p. 167; Con. of Ky., sec. 107; Indiana State Laws, sec. 4421, c.

Johnson, &c., v. Ginn & Co.

c.; Asher v. Beckner, 19 Ky. Law Rep., 521; Bradstreet's Rep., for 1898; Tarbell's Lessons in Language, book 1, p. 81.

BECKNER & JOUETT, FOR APPELLEES, IN A SUPPLEMENTAL BRIEF FOR THE APPELLEE.

1. The bond of appellees under sec. 4424 of Ky. Stats., was not altered and was sufficient.
2. The sureties on this bond were residents of Kentucky as required by the statute.
3. It is not appellees, but the American Book Company, who are trying to secure a monopoly of the sale of text books.
    Citations: Ky. Stats., sec. 4424; Lee v. Alexander, 9 B. M., 25; Todd, Mayor, v. Johnson, &c., 18 Ky. Law Rep., 354.

SAME COUNSEL FOR THE APPELLEES IN A PETITION FOR A MODIFICATION OF THE OPINION.

Question of costs alone discussed.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

The plaintiffs are publishers of school-books, and in this action ask for a writ of mandamus to compel defendant, as county superintendent of common schools for Laurel county, to record in his office the adoption of "Tarbell's Lessons in Language and Grammar, Books one and two," "Frye's Geographies, Primary and Complete (Kentucky Edition)," and "Blaisdell's Our Bodies and How We Live," as text-books in the common schools of that county for the five years next ensuing after January 1, 1897, and to enforce their use. They allege that these books were adopted by the county board of examiners for Laurel county at meetings of the board, on September 14, 1896, and October 26, 1896. Defendant resists the mandamus—First, because he says that these books were not adopted by the board of examiners at the meeting of September 14, 1896; second, he alleges that plaintiffs had not filed copies of Frye's Geographies and Blaisdell's Our Bodies in the office of the superintendent of

[ 42 ]

public instruction, and executed bond, in accordance with section 4422, Kentucky Statutes, prior to the meeting of September 14, 1896; and, third, because Miss McHargue and Mr. Lovelace (who, with himself, constituted the board of examiners for Laurel county on September 14, 1896), were removed from office on October 18, 1896, and others appointed in their places, and that they were therefore ineligible to act at the meeting of October 26, 1896.

The facts, as disclosed by the testimony in the record, are: Appellant was elected superintendent of common schools for Laurel county in 1894, to serve until the first day of January, 1898. On November 1, 1895, he appointed S. A. Lovelace and Miss McHargue members of the board of examiners for that county, to serve, as set out in the order of appointment, for one year, unless they should resign or be removed for cause. In June, 1896, this board met to consider the adoption of text-books, to take effect from and after January 1, 1897. At this meeting, McGuffy's Spellers and McGuffy's Readers, Ray's Arithmetic, Harvey's Grammar and Eclectic Geographies were agreed upon, and the board adjourned to further consider text-books upon history, physiology, and language lessons. They met again for this purpose on July 22, 1896, on which occasion they heard statements and arguments from the agents of appellees and the American Book Company as to the relative merits of their publications on these subjects, and adjourned to meet upon the call of the superintendent. On September 14, 1896, they again met, and appellees claim that, by the votes of Lovelace and McHargue, Tarbell's Lessons in Language and Grammar, Books one and two, Frye's Geographies, Primary and Complete (Kentucky Edition), and Blaisdell's Our Bodies, etc., were adopted. It was agreed at this meeting that each

member of the board should take a paper called "Adoption
Sheets," on which were printed the names of various
books, and mark the books favored by them. This was
done, and these adoption sheets were then folded up with-
out examination and delivered to appellant, as county
superintendent, to be opened and examined at his con-
venience.

It is claimed by appellant that, upon examination
of these sheets, he found that no adoption had been
made, because no two votes were for the same publica-
tions. The original sheets have been brought before us,
and we think it is very clear that Tarbell's Language Les-
sons were adopted by the vote of Lovelace and McHargue,
and that their intention to vote for the other publica-
tions of appellees is fairly inferable from the interlinea-
tions made by them on the adoption sheets.

On the 18th day of September, 1896, the county superin-
tendent removed Lovelace and McHargue from the board
of examiners, without notice to them, by an order entered
upon the record books for that purpose kept in his office,
and appointed other persons to act in their places. The
reasons assigned by him for these removals are that he
had a right to remove at pleasure, without notice, charge,
or trial, and because Miss McHargue was absent from the
county, and had notified him that she would not return
to be present at any meeting to be held for the selection
of text-books, and that the other examiner had manifested
prejudice against the publications of the American Book
Company, growing out of some personal feeling on his
part.

The new board was appointed on September 19, 1896,
and a majority of this new board met on October 2, 1896,
and adopted the text-books in use at that time in the

public schools, and which did not include any of the publications of appellees.

The bond of appellees executed September, 1893, pursuant to section 4423, Kentucky Statutes, did not include the publications known as "Frye's Geographies" and "Blaisdell's Our Bodies and How We Live;" but subsequently these books were sent to the Superintendant of Public Instruction, with the request that they be inserted in the list covered by the bond; and on September 25, 1896, one J. U. Cornelius, surety upon the bond of appellees, notified the Superintendent of Public Instruction that appellees had, without his knowledge, filed an additional list of school-books in the office of the Superintendent of Public Instruction after the date of the execution of the bond, and asked to be released from liability thereon.

On October 20, 1896, appellees executed a bond, in accordance with section 4424, Kentucky Statutes, which was approved by the Superintendant of Public Instruction and which included the publications known as "Frye's Geographies" and "Blaisdell's Our Bodies and How We Live."

After the last bond was executed, on the 26th day of October, 1896, Miss McHargue and Mr. Lovelace appeared in appellant's office, in company with the agent and attorney of appellees, to hold another meeting for the purpose of adopting a list of text-books, and invited appellant to participate therein, which he refused to do. Thereupon Miss McHargue and Lovelace held a meeting, and adopted the text-books which appellees in this proceeding sought to have recorded as the text-books for the use of the county for the ensuing five years.

The first question to be determined is: Did the examiners have the authority to adopt text-books not included in the bond required by section 4424, Kentucky Stat-

utes, which provides: "When any publisher or person selling books who desires to have text-books adopted in the common schools in any county in this State, shall file in the office of the Superintendent of Public Instruction a sample copy of each of the text-books intended for adoption, together with the lowest retail price at which same shall be sold to the patrons and pupils of any county in which same may be adopted, and shall execute bond before the *ex officio* members of the State Board of Education in the sum of ten thousand dollars, with good security resident in this State, in which it shall be distinctly set forth that the text-books of said publisher shall be sold to the patrons and pupils of the common schools in any county in which same may be adopted at a special retail list price, which shall not exceed the present lowest wholesale or retail list price or that may hereafter be fixed by said publisher by persons selling the same for the sale of such text-books in any State or section of the country, and that said special retail list price shall not at any time exceed the price fixed and filed in the office of the Superintendent of Public Instruction which shall be set forth in said bond; . . ." and sample copies of the publications shall also be filed in the office of the Superintendent of Public Instruction.

It seems evident that, in requiring the bond and the filing of sample book of publications intended for text-books provided for in this section, the Legislature intended to secure, for the use of the pupils and patrons of the common schools, not only a cheaper class of text-books, but also books which had been subjected to the scrutiny and investigation of the Superintendent of Public Instruction, and approved by him as suitable for the purposes for which they were intended. And as the books known as

"Blaisdell's Our Bodies and How We Live" and "Frye's Geographies" were not set out in the bond .filed in the office of the Superintendent of Public Instruction, and the prices given, previous to the meeting of September 14, 1896, these publications could not have been legally adopted by the board of examiners.

Whether or not these books were legally adopted at the meeting of October 26, 1896, depends upon the validity of the action of appellant in removing Examiners Lovelace and McHargue from their places on the board, and substituting therefor the names of other persons previous to that meeting.

The statute which authorizes the county superintendent to appoint examiners prescribes no definite term of office for such appointees, and the general rule is: "Where the power of appointment is conferred in general terms and without restriction, the power of removal in the discretion and at the will of the appointing power, is implied, and always exists unless restrained, and limited by some provision, of law." See People v. Robb, 126 N. Y., 180 [27 N. E., 267]; Holley v. New York, 59 N. Y., 166; People v. New York, 82 N. Y., 491; People v. Hayden (Sup), 32 N. Y. S. R., 1116; People v. Durston (Sup.), 3 N. Y. Supp., 522; Laimbeer v. New York, 4 Sandf., 109; People .v. Comptroller, 20 Wend., 595; People v. Mayor, etc., of New York, 5 Barb., 43; *Ex parte* Hennen, 13 Pet., 230; 10 Law Ed., 138; Patton v. Vaughan, 39 Ark., 211; People v. Higgins, 15 Ill., 110; Newsom v. Cocke, 44 Miss., 352 [7 Am. Rep., 686]; Williams v. Boughner, 6 Cold., 486; Houseman v. Com., 100 Pa. St., 222; Field v. Girard College, 54 Pa. St., 233; Keenan v. Perry, 24 Tex., 253; also 19 Am. & Eng. Enc. Law, *562f, and authorities there cited, and Mechem on Public Officers, section 445.

There is nothing in the case of Todd, Mayor, v. Dunlap, 99 Ky., 449 [36 S. W., 541], inconsistent with this doctrine. In that case the court simply adhered to the doctrine that the power to remove an officer who holds for a definite time carries with it the power to remove for cause, upon notice and trial; and it is only in cases where the power to remove without trial is expressly given that it can be exercised.

We therefore conclude that appellant had the power to remove Examiners Lovelace and McHargue without notice or the assignment of any cause; and it follows that there was no legal adoption of appellee's text-books at the meeting of October 26, 1896.

But as Lovelace and McHargue were the regularly qualified and acting examiners at the time of the meeting of September 14, 1896, and it appears that a majority of the board, by their votes, adopted the text-books known as "Tarbell's Language Lessons, Books one and two," and that these books were covered by the original bond executed by appellees, and were therefore eligible for selection, to this extent their action was valid, and it was the duty of appellant to record in his office the adoption of the last-named books.

There was no legal adoption of the books known as "Frye's Geographies" and "Blaisdell's Our Bodies and How We Live," and, to the extent that the judgment appealed from holds to the contrary, it is reversed, and the cause is remanded for proceedings consistent herewith.