CASE 34.—APPLICATION TO THE APPELLATE COURT BY J. M. RENSHAW FOR A WRIT OF PROHIBITION AGAINST THOMAS P. COOK, JUDGE OF THE THIRD JUDICIAL DISTRICT OF KENTUCKY, TO RESTRAIN HIM FROM INTERFERING WITH THE TRIAL OF AN APPLICATION FOR AN INJUNCTION BEFORE THE COUNTY JUDGE.—June 20.

# Renshaw v. Cook, Judge

Application heard by the full court.—Writ granted.

1.  Courts—Superintending Control of Inferior Courts—Constitutional Provisions.—Under Constitution, section 110, conferring on the court of appeals power to issue writs necessary to give it general control of inferior jurisdictions, the court of appeals may, in its sound judicial discretion, issue a writ of prohibition to prevent an inferior court from proceeding out of its jurisdiction or invading the jurisdiction of another court, or may so control an inferior court having jurisdiction as to prevent irreparable injury and injustice where there is no adequate remedy by appeal.

2.  Sheriffs and Constables—Bonds of Sheriffs—Failure to Give—Removal.—Under Ky. Stats. 1903, sections 5134, 4557, authorizing the county court to require the sheriff to give additional bonds, requiring the court to cause the sheriff annually to renew his bond, and, on his failure to do so, enter an order suspending him from acting until he gives the bond or vacating his office, and Sess. Laws, p. 152, c. 22, requiring the sheriff on or before the 1st day of March in each year

to enter into bonds for the faithful performance of his duties, and providing that, on his failure so to do, he shall forfeit his office, and the county court may appoint one to fill the vacancy, etc., the county court on the failure of the sheriff to give the required bonds may enter an order declaring the office vacant and appoint another to fill the vacancy, without giving the sheriff notice.

3. Same.—Under Sess. Laws 1906, p. 152, c. 22, requiring the sheriff on or before a designated day in each year to enter into bonds for the faithful performanc of his duties, and declaring that a quietus by the auditor of public accounts and from the fiscal court shall be produced by each sheriff to the county court on or before such date, and, no tax book shall be delivered to the sheriff who shall fail to exhibit such quietus, etc., the obtaining of the quietus is not a condition precedent to the execution of the bond required.

4. Judges—County Judge—Acts Off the Bench—Effect.—The county court must speak by its records, and the county judge, when off the bench, has no authority to bind the county court, and anything that the county judge may have said as an individual cannot militate against the judgment of the county court.

5. Courts—County Courts—Special Terms—Statutes.—Under Ky. Stats. 1903, section 1058, providing for a regular term of the county court once each month, and authoizing the holding of special terms for the transaction of any business excepting the probate of a will, the granting of a tavern, liquor, or druggist license, a county jujdge may at a special term enter a judgment vacating the office of sheriff for his failure to give the statutory bonds.

6. Judgment—Record—Conclusiveness.—The record of a county court showing that the sheriff has not filed the required bonds cannot be contradicted.

7. Same—Res Judicata.—Under the statute giving jurisdiction to a judge of the court of appeals to dissolve an interlocutory judgment granted by a circuit court judge or any inferior officer, the judgment of a judge of the court of appeals on that matter is the law of the case so long as the facts are substantially unchanged, and until the same is reversed or departed from by the court of appeals, and, like other judgments, it is binding between the same parties or their privies before whatever judicial tribunal the matter in issue may come, and it cannot be avoided by bringing a new suit involving substantially the same question.

Renshaw v. Cook, Judge.

8. Injunction—Interlocutory Injunctions—Dissolution—Reinstatement.—Interlocutory injunctions dissolved by the trial court or judge and reinstated by a judge of the court of appeals exercising jurisdiction under the statute conferring jurisdiction on a judge of the court of appeals may not thereafter be disregarded by the parties or the inferior tribunal where the action is pending so long as they remain interlocutory, but, where on the complete preparation of the case the record presents a substantially different state of facts from that made to appear on the interlocutory hearing, the trial court may refuse to grant a permanent injunction, thereby dissolving the temporary one, and, where the trial court grants a temporary injunction which on application to a judge of the court of appeals is dissolved, it stands dissolved throughout the litigation or until the final trial in the circuit court.

9. Appeal and Error—Right of Appeal—Statutes.—All appeals are regulated by statute.

10. Same—Decisions Reviewable—"Amount"—"Value."—Under Ky. Stats. 1903, section 978, authorizing appeals to the circuit court from judgments of the county court where "the amount in controversy" is over $50, orders of the county court removing and appointing sheriffs are not appealable, the word "amount" in the quoted phrase applying only to a judgment for money, though the word "value" may apply to judgments for a number of things other than money.

11. Injunction—Preliminary Injunction—Authority of Court.— Under Civil Code Prac., section 273, providing that an injunction may be granted at the commencement of the action or before judgment by the court or by any circuit judge, or by the county judge if the judge of the court be absent from the county, etc., the county judge, on the circuit judge being absent from the county, has jurisdiction to hear and determine the question whether a temporary injunction applied for should be granted.

12. Judges—Disqualification.—The fact that a county judge was joined as a defendant in an action does not disqualify him from hearing an application for a temporary injunction in a subsequent action involving the same issues, where his joinder was merely formal, and where he had no personal interest in the controversy.

S. Y. TRIMBLE attorney for appellants.

DOWNER & RUSSEL and TRIMBLE & BELL of counsel.

## POINTS AND AUTHORITIES.

1. A public office is not property nor any contract right. (Throop on Public Officers, sec. 345; Meachem on Public Officers, secs. 463, 464; Taylor v. Beckham, 221 Ky. Law Rep., 1743.)

2. The failure of a sheriff to execute his annual bonds on or before the day prescribed by law ipso facto forfeits his office. (Kentucky Statutes, 4130, 4131, 4557; Acts of 1906, 152 and 153; Basham v. Commonwealth, 13 Bush, 38; Lowe v. Phelps, 14 Bush, 644; Commonwealth v. Yarbrough, 84 Ky., 496; Schuff v. Pflanz, 99 Ky., 97;; Meachem on Public Officers, 167.)

3. Even though the sheriff by failure to execute his bonds at the time required does not thereby ipso facto forfeit his office, yet the county court has jurisdiction both of his person and of the subject matter to make an order without any notice to him vacating the office and appointing his successor. (Calloway v. Commonwealth, 4 Bush, 383; Stokes v. Kirkpatrick, 1 Metcalf, 144.)

4. It is not necessary that the sheriff shall produce a quietus from the fiscal court of his county before the execution of his annual bonds or any of them. (Kentucky Statutes, sections 4130 and 4131; Acts of 1906, 152 and 153.)

5. Even though some other official was remiss in the performance of his duty, this was no excuse for a failure on the part of the sheriff to comply with the law requiring him to execute his bonds. (Lowe v. Phelps, 14 Bush, 644.)

6. The records of the county court show that the regular March term was continued from day to day until March 11, and that the orders of each day were duly signed by the judge thereof and which is conclusive. (Kentucky Statutes, 1060; Middleton v. Hensley, 21 Ky. Law Rep., 703; Commonwealth v. Howard, 99 Ky., 542; Fish v. Genett, 22 Ky. Law Rep., 174.)

7. Even though the regular March term of the Christian county court was not in session on March 11, 1908, when the order of removal was made, and if not at the regular term, it was certainly a special term, such as the county judge had authority to hold at any time for this purpose. (Kentucky Statutes, 1058.)

8. An injunction bond is necessary to the validity of an injunction. (Civil Code, section 278, subsection 3.)

JOHN C. DUFFY, McQUOWN & BECKHAM, for defendants.

1. The cases now pending before Judge Cook in the circuit

Renshaw v. Cook, Judge.

court at Hopkinsville, are (1) an appeal from the order of removal made by the county judge, and (2) a petition in which Judge Smith, as plaintiff sought to enjoin Renshaw from qualifying and assuming to act as sheriff of Christian county; (3) a petition by Renshaw in which he seeks by mandatory injunction, to require Smith to surrender to him the office-room and furniture belonging to the sheriff, and to prevent him from acting as sheriff; (4) a petition filed by Smith against Renshaw and Prowse in which the plaintiff seeks, by prohibition, to prevent Prowse, county judge, from hearing an application for the mandatory injunction in the third named suit. These cases all involve the question of the power of the county judge to remove the sheriff, Smith; without notice or hearing and the right of Smith to appeal from that order to the circuit court.

2. The statute under which this order was made (section 4557, Ky. Stats.), does not expressly or by implication, dispense with notice or hearing. It simply provides that the sheriff may be suspended until he shall execute a bond, or he may be removed.

3. The rule laid down in all the authorities cited must apply to this case, and from these authorities it is clear that before the county judge can remove a sheriff under the statute, there must be notice of the charges against him with an opportunity to be heard. In this case there is no pretense that any such notice was given, or opportunity for hearing. The authorities clearly denounce a removal under such circumstances and under such statute, as void.

4. The sheriff, Smith, at the time this order of removal was made, had in full force and effect six bonds, and the surety was liable for any default of his upon each and all of said bonds at any time during his term of office. This is expressly provided by section 4134 of the Ky. Stats.

5. So that there could have been no ground of apprehension that the revenues of the state or the county were in any danger by reason of Smith remaining in the office of sheriff.

## AUTHORITIES CITED.

Todd v. Dunlap, 99 Ky., 460; Johnson v. Ginn & Co., 20 Ky. Law Rep., 1478; Meachem on Public Officers, sec. 454; Troop on Public Officers, 364; Commissioners v. Johnson, 124 Ind., 145; State v. Walbridge, 119 Mo., 383; Coleman v. Glenn, 103 Ga., 458; Ridgeway v. Moody, 91 Ky., 581; 2 Cyc., 547; Dryden v. Swinburn, 15 W. Va., 246; Boyd County v. Ross, 95 Ky., 167; section 2276 Civil Code.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR.
—Granting writ.

This is an application in this court for a writ of
prohibition against his honor, Thomas P. Cook, judge
of the Third judicial district of Kentucky, restraining
him from interfering, by order or judgment of his
court, with the trial of an application for an injunc-
tion before County Judge Prowse of Christian county,
in an action in the Christian circuit court between
J. M. Renshaw, as plaintiff, and David Smith, as de-
fendant. The last-named action was brought by Ren-
shaw against Smith to oust the latter from the office
room in the county courthouse set apart for the
sheriff of the county, and to enjoin his using the
furniture, etc., or interfering with plaintiff ·in the
occupancy of the said room and furniture, or the
handling of judicial process, the collection of taxes,
etc. Smith was elected sheriff of the county and
qualified; but, having failed to renew his bond as
required by statute, his office was declared vacant, and
Renshaw appointed sheriff, who qualified by execut-
ing the bond and taking the oaths required by law.
Smith, conceiving his removal to have been irregular,
sued out an injunction against Renshaw's interfering
with his incumbency of the office. The injunction was
granted by Circuit Judge Cook. Application was
made to Judge Barker, of this court, to dissolve the
injunction. Upon hearing, Judge Barker did dissolve
the injunction. Smith notwithstanding refused to
give up possession of the office in the courthouse set
apart for the sheriff. It was then Renshaw sued him
for its possession, and sought an injunction against
his continuing to occupy it, and thereby interfering

Renshaw v. Cook, Judge.

with the plaintiff's discharge of his official duties. As the circuit judge was absent from the county, notice of application for a temporary injunction in the case was given to be heard before the county judge of the county. Before that application could be heard, Smith applied to the respondent as circuit judge of the district for a writ of prohibition against County Judge Prowse, restraining him from hearing or granting the injunction. In his petition Smith raises again the question of the validity of the order of the county court declaring his office vacant, claiming it was void for want of notice to him of the contemplated action. The respondent granted the temporary writ of prohibition against County Judge Prowse. By section 110 of the Constitution it is provided: "The Court of Appeals * * * shall have power to issue such writs as may be necessary to give it general control of inferior jurisdictions." Whenever any inferior jurisdiction, particularly a circuit court, is proceeding beyond its jurisdiction, the writ may issue out of this court on a proper application to prevent the exercise of the usurped jurisdiction. The party complaining will not in such case be put to the annoyance, expense, and jeopardy of a trial before the tribunal without jurisdiction; or, when the inferior court has jurisdiction, but there is not an adequate remedy by appeal, this court may in its discretion exercise a supervisory control over the inferior court so as to prevent irreparable injury and injustice. But it does not follow that, because this court may do so, it will, as a matter of right in a claimant, use this extraordinary writ in either of the instances above indicated. The matter rests in a sound judicial discretion, to be exercised upon the merits of the particular case. It is exercised most sparingly; for it is believed that ordi-

vol. 129—23

Renshaw v. Cook, Judge.

narily the usual process of the law, the remedy by appeal and the like, is sufficient to rectify any error that may be committed in the course of the trial below. There are many cases where no appeal is allowed to this court. It would be rare when this court would feel justified in interfering with the exercise of its jurisdiction by the inferior tribunal in such matters. And, in the exercise of discretion vested in them by law, the inferior courts will not be subjected to interference from this court merely because our views on the subject may be at variance with those of the lower court. There must in such case be such an abuse of discretion as would indicate a failure to hear, or a bias in the consideration of the question by the trial judge. But when there is not a discretion, and the inferior court is proceeding out of its jurisdiction, or is invading the jurisdiction of another court or officer, this court may grant the writ to prevent the unauthorized interference.

In the suit at bar there is raised the question of the validity of the action of the county court of Christian county in declaring a vacancy in the office of sheriff, and in appointing plaintiff Renshaw to fill the vacancy. The facts upon which this question is raised fully appear in the opinion delivered by Judge Barker on the motion to dissolve the injunction above alluded to when the case was before him on that question. We now adopt that opinion as the opinion of this court, and the question passed upon in that opinion are, for the reasons there given, now similarly approved by this court. That opinion is as follows:

"At the regular November election, 1905, the plaintiff, David Smith, was elected sheriff of Christian county, and thereafter qualified by taking the oath of office and executing the bonds required by law. On

the first Monday in January, 1907, he executed the annual bonds required by the statute for the year 1907. On March 1, 1908, he failed to execute either of the three bonds required to be executed for that year, and on March 11 the judge of the county court entered an order declaring the office of sheriff vacant, and appointing the defendant, J. M. Renshaw, to fill the vacancy until the next general election for the office of sheriff. Thereupon the plaintiff filed this action in equity for the purpose of obtaining an injunction restraining Renshaw from taking possession of the office of sheriff of Christian county, or in any way interfering with the plaintiff in the execution by him of the duties thereof. A temporary restraining order was entered by the judge of the circuit court according to the prayer of the petition, and thereupon the defendant, upon notice, made a motion before me, as one of the judges of the court of appeals of Kentucky, to dissolve the injunction so obtained. After hearing the oral argument of counsel, I deemed the matter of such importance that I brought it before the Eastern division of the court of appeals, and submitted the various questions involved in the adjudication of the motion to the judges composing that division as if the motion were a case regularly pending in the court of appeals. The proper adjudication of the pending motion will involve a construction of the following sections of an act entitled 'An Act relating to revenue and taxation,' enacted by the General Assembly of the Commonewalth of Kentucky in 1906 (see Sess. Laws 1906, pp. 152-153, c. 22), and of the Kentucky Statutes: Article 8, section 2: 'The sheriff or collector shall, on or before the first day of March next succeeding his election, and on or before the said day annually thereafter, enter into bonds with surety

for the faithful performance of his duties. A quietus by the auditor of public accounts, and from the fiscal court of his county for the preceding year shall be produced by each sheriff or collector to the county court on or before that day, and no tax book shall be delivered to the sheriff or collector after the first year of his term who shall fail to exhibit such quietus on or before that date. He may execute bond at any time. after he receives his certificate of election up to and including the first day of March succeeding his election, and it shall be the duty of the judge of the county court to hold a court at any time the sheriff may request for that purpose. The county judge shall judge of the sufficiency of the surety, and in no case shall sureties be taken who are not jointly worth, subject to execution after the payment of all their debts and liabilities, a sum equal to the aggregate amount of money, which may probably be received by the sheriff or collector during the year succeeding the execution of the bond.' Article 8, section 3: 'On the failure of the sheriff or collector to execute bond and qualify as hereinbefore provided, he shall forfeit his office, and the county court may appoint a sheriff or collector to fill the vacancy until a sheriff or collector is elected. * * *' Section 4557, Ky. Stats., 1903: 'It shall be the duty of the county court to cause the sheriff, annually, to renew his bond required by this chapter, and oftener, if the court may deem proper; and upon his failure to do so, the court shall enter up an order suspending him from acting until he gives said bond, or the court may vacate his office.' Section 1058: 'There shall be a regular term of the county court held by the county judge in each county once every month, on Monday, and until changed as herein provided, shall be held on the same day it now is. The

time of holding the county court in any county may be changed by an order made by the county judge, and entered upon the records of the county court at the last regular term held in the year next preceding the year in which the change is to be made.  Special terms of the county court may be held at any time for the transaction of any business except the probating of a will, or granting tervern, liquor, or druggist license; and the court may adjourn from time to time until the business is disposed of, but no adjournment shall be to a time beyond the commencement of the next regular term.'  Section 4143: 'The county court may require the sheriff to give an additional bond or bonds, with good surety, to be approved by the county court, whenever it may deem the interest of the State or county demands; and the sureties on all the bonds executed by the sheriff shall be jointly and severally liable for any default of the sheriff during the term in which said bond may be executed, whether the liability accrued before or after the execution of such bond or bonds.'  There is no difference made by the revenue act of 1906 in the law bearing upon the question in hand, except the change in the date upon which the sheriff is required to execute bonds.  In the prior statute the day fixed was the first Monday in January of each year.  The language of section 2 of article 8 of the act of 1906 peremptorily requires the sheriff to execute on or before the 1st day of March of each year of his term bonds with sufficient surety conditioned for the faithful performance of his duties; and it is not disputed in this record that the plaintiff failed to discharge this duty on or before the 1st day of March, 1908.  Section 4557 of the Kentucky Statutes of 1903 provides that it shall be the duty of the county court to cause the sheriff annually to renew his bonds,

and, upon his failure to do so, the court is required either to suspend him from acting until he does give bond, or may vacate his office. So far as this phase of the case is concerned, I am of opinion that it is concluded by the reasoning in Schuff v. Pflanz, 99 Ky. 97, 18 Ky. Law Rep. 25, 35 S. W. 132. That case is similar in principle in all respects to the case at bar, except that, after the sheriff failed to give bond at the proper time, the county judge accepted his bond, and then entered an order vacating the office and appointing a successor. Two questions arose from this proceeding: First, the right and duty of the county judge to declare the office of sheriff vacant upon the failure of that officer to execute the bonds as required by law; and, second, the effect upon this right and duty in permitting the officer to execute the bonds after the time required by law. The court held, construing section 4130 (identical with section 2, article 8, Acts 1906, except as to date of bonds to be given) with section 4557 of the Kentucky Statutes, that the county court had the right to vacate the office of sheriff upon the failure of the officer to execute the bonds as required; but, having accepted the bond from him, the court could not afterwards vacate the office. In other words, it was there held that the court, under the language of section 4557, could do either of two things: First, suspend the officer until he executed the bonds; or, second, vacate the office. The first alternative authorized the court to force the officer to give bond without vacating his office, and what the court did was to practically adopt this method, although the order of suspension was not entered; but it was clearly held that the court might have vacated the office for the failure to give the bonds at the proper time. In the opinion it is

Renshaw v. Cook, Judge.

said: 'This statute (section 4557) should be construed in connection with the revenue statutes (now section 2, article 8, p. 152, c. 22, Acts 1906), and it is manifest that a fair interpretation of the legislative meaning is that, upon the failure to execute any bond required of this official for the protection of the State, county, or citizen, the county court may remove him from office, and particularly where by statute it is made the plain duty of the official to execute the bond on a particular day. The duty then devolves on the sheriff, and he must comply with the law; but it does not follow because the sheriff fails to renew his general bond or to give an annual bond for the collection of the revenue that the county judge is powerless to accept a bond after the first Monday in January. He may, it is true, vacate the office, but before he does this he accepts a bond that is in addition to or a new bond, upon which the last sureties became jointly liable with the sureties on the first bond. It is a bond sufficient to satisfy the court that all will be protected who are interested in its execution, and when accepted, the sheriff having previously qualified, it is then too late to enter an order vacating the office.' In the case at bar the county judge did not accept the bond from the sheriff, or permit him to execute one, and this differentiates it from the phase of Schuff v. Pflanz; and it necessarily follows from the principle of that case, as applied to the facts of this, that the county judge had the right to vacate the office of the plaintiff upon his failure to execute the bond at the required time, and to appoint the defendant sheriff in his stead.

"It is, however, insisted by the plaintiff that the language of section 4557 requires the county judge to give the sheriff notice that he has failed to execute his bond. This position is based upon the language

of the statute that 'it shall be the duty of the county court to cause the sheriff, annually, to renew his bond,' etc.; it being said that this language requires the county judge to exercise a supervising oversight as to the sheriff, and, at least, to give him notice of his failure in regard to the execution of his bonds, and afford him an opportunity to rectify the omission. It seems to me that this would be a very strained construction to place upon the language of the statute. Taking the section as a whole, it is clear that the county court shall cause the sheriff to execute his bond, either by suspending him until he does so or vacating his office, if he chooses. The duty of executing the bond was upon the sheriff, and he knew whether he had performed this duty or not, and, upon his failure to do so, the statute cast upon the county judge the duty of forcing the delinquent officer to execute the bond by suspending him, or of vacating the office and filling it with one who would execute the bond required by law. The plaintiff pleaded (and introduced evidence to support it) that in October, 1907, one Frank Rives had been appointed by the county judge (the predecessor of the county judge involved here) as special commisisoner to settle his accounts as sheriff as the basis for a quietus to be thereafter obtained from the fiscal court; that the plaintiff did not settle his accounts with Rives in 1907, because he was advised by the county attorney not to do so until after the railroad tax was collected, and that upon the advice of the county attorney he deferred the settlement; that in January, 1908, Rives, who had been elected to the State Senate, left Christian county and went to Frankfort, Ky., in the discharge of his legislative duties, and remained there until March 1, 1908, and that, not being able to make the settlement of his

accounts, he could not obtain a quietus, and therefore did not execute his bond; that, anticipating this result, he spoke to the county judge, and that officer told him that, if he did not execute the bond on the 1st day of March as the law required, he would permit him to execute it afterwards and date it March the 1st. All of this was controverted in the pleadings and contradicted most emphatically by the county judge in the evidence; but, assuming the facts to have been as contended for by the plaintiff, can it avail him as a legal excuse for the non-performance of his duty in the premises? In the first place, the obtaining of the quietus required by the statute is not a condition precedent to the execution of the bond, and is entirely separated from it by the statute. The plaintiff was, indeed, required to have the quietus, but the failure to obtain it did not prevent his executing bond, and the execution of the bond in no wise prevented the consequence from the failure to obtain the quietus. Without the quietus the statute provides that the tax book shall not be delivered to the sheriff; but this would be true whether the bond was executed or not. The execution of the bond and the obtaining of the quietus are separate duties; and the failure to perform these duties imposes separate and distinct consequences. Furthermore, the county court must speak by its records. The county judge, when off the bench. has no power or authority to bind the county court, and it would entail most disastrous consequences if those having business with the county court could come in and set up conversations had with the judge on the street or out of office in bar of the consequences of the judgments of the court. Nothing that the county judge may have said as an individual can be allowed to militate against the judgment of the

county court. It is an elementary proposition that even written opinions of the court do not bind; but it is the decree entered upon the judgment roll that has force and effect. Therefore, admitting to be true all that the plaintiff contends took place between the county judge and himself with reference to the execution of the bond involved here, it can not be allowed to avail him upon this motion.

"It is also said that the regular term of the county court of Christian county commenced on the 2d day of March, 1908, and there was no order of adjournment to the 11th day of March, 1908, when the judgment vacating the office of plaintiff was entered. I think the record conclusively refutes this as a matter of fact; but, whether it does or not, section 1058 of the Kentucky Statutes of 1903 expressly permits the county judge to hold special terms of court at any time he may see fit for any business but certain named exceptions, of which that involved here is not one. It was not necessary that the county judge should give plaintiff notice that he intended to enter a judgment vacating the office. The court only had jurisdiction to enter the order provided the bond had not been accepted and filed. This was a matter of record, and its existence jurisdictional. There was but one question: Had the bond been filed? This could only be established by the record. Upon the failure to execute the bond and file it on the day required by the statute the authority of the county court arose to vacate the office. The record shows (and it could not be contradicted) that no bond was filed. The right to vacate the office was absolute, and the judgment of vacation removed the plaintiff from office.

"For the foregoing reasons, I am constrained to dissolve the injunction granted by the circuit judge;

and it is so ordered. In this conclusion I am authorized to say that Chief Justice O'Rear and Judges Lassing and Carroll concur.''

Just why that opinion was not deemed binding upon the parties to the litigation, and upon the circuit judge, whose official action is reviewed and reversed, we are not told. It was ignored, or attempted to be, by Mr. Smith and his counsel, and seems to have been regarded by the circuit judge as not binding upon him, either because it was not the authoritative action of the appellate court, or was made inapplicable by other facts occurring subsequent to its rendition, and which materially affected the status of the case. The circuit judge has not filed a response in this proceeding. Hence we are left in some doubt as to what he based his action upon. If counsel who appear here for him correctly present his views, then we may assume that his action was based upon one or both of the following propositions: First, that the action of the county court declaring the office of sheriff vacant was had without notice to the former incumbent, Smith, and was a judgment depriving him of his office without a day in court, and for that reason was void; that being void, the opinion of Judge Barker delivered upon the motion to dissolve the injunction in the first action raising the question, holding that it was not void, was erroneous and not binding upon anybody in another action, although the same question might be again raised. Second, that since the opinion was delivered Mr. Smith has prosecuted an appeal to the circuit court from the judgment of the county court, and has executed the necessary appeal bond, which in appeals in those courts operates as a supersedeas; that the order of the county court appointing Renshaw was therefore suspended until the circuit court should

act on the appeal, and that in the meantime Smith was entitled to discharge the duties of sheriff and occupy the room set apart for that office; that Prowse, the county judge, was made a party to the suit enjoining Renshaw from taking possession of the office (the first suit), and was disqualified by that fact from sitting in judgment on the motion in the second suit, the one brought by Renshaw against Smith for an injunction and possession of the office rooms, etc.

The writer feels that nothing can be added to the reasoning in Judge Barker's opinion delivered upon the motion to dissolve the injunction, but counsel for respondent assail its soundness on the ground that it is in conflict with certain opinions heretofore delivered by this court, and which hold that one elected to an office who has qualified can not be deprived of his office by the judgment or action of any tribunal without having had his day in court; that is, notice of the action in which it is sought to oust him. It is conceded that, if the statute authorized his removal without notice, the act would be valid. Page v. Hardin, 8 B. Mon. 648, and Todd v. Dunlap, 99 Ky. 460, 36 S. W. 541, 18 Ky. Law Rep. 329, are relied on in support of the respondent's contention. Page v. Hardin, supra, was the removal of the Secretary of State from office by the Governor because of the former's alleged neglect of official duty. The act was done upon the Governor's own motion, and without trial or notice. The Secretary of State was then removable from office by the Governor for cause. The court found the fact to be that the alleged cause did not exist. Aside from certain deficiencies in pleading upon which the court, in a large measure, rested its decision, it was stated, and we think correctly, that an appointment of one for office for a definite term vests

the appointee with such right to its emoluments that he can not be ousted without cause and a hearing, unless the statute provides for dispensing with such procedure. The same principle was restated in Todd v. Dunlap, supra, where it was averred that the mayor and aldermen of Louisville were threatening to remove certain members of the board of public works without cause or notice. But we are of opinion that the principle relied on is not applicable in this case. Here the incumbent had not the right to the office at all, unless he first executed certain bonds. The execution of the bonds each year at the time fixed by statute is a condition precedent to his right of incumbency. The second and third years are not different from the first. If he failed originally to qualify by executing bonds after his election, no one would say that the elected sheriff must first have a notice that the office would be declared vacant before the county court could so declare. The statute is explicit, and the reasons are as important that the second and every subsequent annual bond be executed as the first. The failure to execute one of them works a vacancy in the office, subject to the discretion of the county court to allow further time as to the bonds subsequent to the first one. It is not a forfeiture or a penalty for something done, but is the equivalent of a resignation. The office became vacant because the statute declares that is the result, unless the county court extend the time. The provisions of the statute are for the benefit of the taxpayers and the public. The office is one of vast importance. That official collects all the taxes in his county for the State and county. The Legislature has taken great pains to safeguard the public by exacting the prompt execution of sufficient bonds, and vesting the county courts with large discretion in the matter

of seeing that the bonds are solvent and are executed
when they should be.  The order of the county court
did not deprive Smith of his office.  It was the statute.
The county court was given the power to stay the
operation of the statute by extending the time to the
sheriff within which to execute the bond.  But with-
out such extension the office was vacated and the
sheriff and all the world had notice of that fact from
the statute itself.  In Schuff v. Pflanz, supra, the court
did extend the time by accepting the bond subsequent
to the date fixed by statute; or, in other words, waived
the failure by accepting the bond after the time fixed
by statute.  That case goes no further, and it should
not.  Such statutes affect the State revenue, and are
not to be dealt with lightly and played with as at
shuttlecock according to the convenience or partiality
of public officials.  They should be held to mean what
they say; and, when the statute says that, if the
sheriff fails to execute a bond to secure the collection
of the public revenue on or before the 1st day of
March, the office shall thereupon become vacant, and
the county court shall thereupon  appoint  his  suc-
cessor, there ought not to be read into the statute
something different—for instance, that, if the sheriff
without good excuse fails to renew his bond, the
county court may, upon notice and after trial, adjudge
the office to be vacant, and fill the vacancy by appoint-
ment.  It does not make any difference under this
statute what the reason was that prevented the sheriff
from executing the required bonds.  It is his failure
that vacates the office.  There is nothing for trial.  No
extraneous fact to be ascertained; no dereliction of
conduct to be adjudged.  Whether the bond had been
executed the records of the court will show, and, if
not executed, the statute takes effect, unless the court

sees proper to extend the time, as it was held in Schuff
v. Pflanz it might do under section 4557, Ky. Stats.,
1903.  It was suggested in argument that the sheriff
might tender a good bond within the time, and the
county court might from partisan or other improper
motive refuse to accept it or to allow the record to
show any fact connected with the tender.  It is suffi-
cient to say that the suppositious case is not here.
It is quite likely, as is usual, a good tender would be
held to be the equivalent of doing the act required, and
that a court of competent jurisdiction would compel
the acceptance of the bond; its solvency being con-
ceded.  We adhere to the conclusion on this point
stated in Judge Barker's opinion herein adopted.

By statute a judge of the court of appeals is given
jurisdiction to dissolve an interlocutory injunction
granted by a circuit court judge or any other inferior
officer.  The judgment of the appellate judge on that
matter is the law of that case so long as the facts
shown in the record are substantially unchanged, until
it may be reversed or departed from by the court of
appeals.  The jurisdiction is conferred by statute—
as all appellate jurisdiction is—and, when exercised,
neither the parties to the record nor the inferior
courts are at liberty to set it aside.  For the time
being it is as binding upon everybody concerned as if
rendered by the court of appeals sitting in banc.  Like
other judgments, it is binding not only in the par-
ticular case, but as between the same parties or their
privies, and, before whatever judicial tribunal it may
come, it is binding upon them all if the same subject-
matter is involved.  It cannot be avoided by bringing
a new suit about the same thing, presenting for deci-
sion again the same or substantially the same dis-
puted question of law and fact.  To allow such

practice would bring the authority of the law into disrespect, and unsettle that which it was intended by the statute conferring the jurisdiction should be put at rest for the time being. Final authority in such matters must be vested somewhere, and, whenever vested, when exercised it should be respected and must be obeyed. When the circuit judge's action in such matter is final by the operation of the statute, it binds everybody, including this court, till such time as it may be overborne by the means allowed by law. Interlocutory injunctions, if dissolved by the trial court or judge, when reinstated by a Judge of the Court of Appeals, may not thereafter be disregarded by the parties or the inferior tribunal where the action may be pending, so long as they remain interlocutory. If upon the complete preparation of the case the record presents a different state of facts substantially from that made to appear on the interlocutory hearing, the trial court may then refuse to grant the permanent injunction, thereby dissolving the temporary order. Then this court may in the manner allowed by the Code (section 747, Civ. Code Prac.) reinstate the interlocutory injunction pending the appeal, or by reversing the judgment on final hearing order it to be reinstated by the trial court. On the other hand, if the trial court grants a temporary injunction, which on application to a judge of this court is dissolved, it must stand dissolved throughout the litigation, and until a final trial in the circuit court, when if the facts are materially different from those shown on the interlocutory hearing, a permanent injunction may be granted by the trial court. Any other procedure would beget unseeming conflict in authority and a possible war between jurisdictions.

But it may be that the circuit judge proceeded upon

Renshaw v. Cook, Judge.

the idea that by the appeal prosecuted by Smith from the order declaring the office of sheriff vacant and appointing Renshaw to it that order was superseded, and that Renshaw had no right to the office whilst the order appointing him was suspended. All appeals are regulated by statute. Those to this court from judgments of circuit courts include all matters not excluded by thd statute (section 950, Ky. St. 1903); those to the circuit court from county and other inferior courts such only as are expressly named and allowed by the statute (section 978, Ky. St. 1903). The statute conferring appellate jurisdiction upon the circuit court reads as follows: "Appeals may be taken to the circuit court from all orders and judgments of the fiscal court or quarterly court in civil cases where the value in controversy, exclusive of interest and cost, is over twenty-five dollars, and from all judgments of the county court where the amount in controversy is over fifty dollars, exclusive of interest and cost; and from all judgments and orders of said court in cases of bastardy, or in the settlement of the accounts of personal representatives, assignees, guardians, trustees, curators and other fiduciaries, and from orders granting, revoking or refusing letters testamentary or of administration, or appointing or refusing to appoint, or removing curators, guardians, trustees or committees of estates, or granting or refusing to grant druggist, tavern or liquor license, and from judgments in proceedings to condemn land for any purpose, and in all other cases allowed by law." It will be observed that in allowing appeals from quarterly and fiscal courts to the circuit court the jurisdiction is restricted to "civil cases where the value in dispute" exceeds $25; but the language granting appeals from judgments of county

vol. 129—24

courts is significantly different: "All judgments of the county court where the amount in controversy is over fifty dollars, exclusive of interest and cost, may be appealed from." Then follows a list of other judgments of county courts that may be appealed from, including most of the matters over which that tribunal has jurisdiction, but not including the order of the county court removing or appointing a sheriff. It must be presumed that the Legislature was not so particular in this matter without intention. Knowing that they were creating an appellate jurisdiction from the county to the circuit courts, and naming specifically so many of the matters over which that tribunal had jurisdiction, most of them of much less importance than the one of appointing or removing a sheriff, it must be taken that they meant to exclude the latter from the appellate jurisdiction thereby created. But it is argued that the value of the office of sheriff is far in excess of $50, and we have no doubt that is true. But the value of the thing in controversy is not the test in allowing appeals from the county court, although it is in appeals from quarterly and fiscal courts. It is the "amount in controversy" that controls the question in appeals from such county court judgments as are not otherwise specified. The word "amount" can apply only to a judgment for money, while "value" may be applied to judgments for a number of things other than money. The office of sheriff ought not to be left vacant, nor ought the solvency of the bonds required, or their prompt execution, be delayed or determined by any other official than the one upon whom the Legislature has imposed that duty. For a great many years the county courts alone have had that jurisdiction. They are peculiarly qualified, as the Legislature seems to have considered,

to discharge it acceptably and safely. County judges are elected with that duty in view, and it may be safely supposed that they are chosen by the electors with some particular reference for their fitness to discharge it. Circuit judges serve a district more frequently made up of a number of counties. They have not generally the acquaintance nor the means of personal knowledge touching the financial standing of the securities who may be offered on sheriff bonds. Nor are circuit clerks who accept appeal bonds so well qualified generally as are the county judges to pass on such questions. The county judge's jurisdiction is mainly over the fiscal affairs of his county. He has many means and opportunities afforded by the daily affairs of his office for knowing who are safe sureties and the amount that will probably pass through the sheriff's hands, not open to other officials. The situation and the studied language of section 978, Ky. St. 1903, supra, and the rule of construction that the expression of some indicates the exclusion of all others, leave us in no doubt that orders of the county courts removing and appointing sheriffs are not the subject of appeal to the circuit court. Hence the appeal attempted by Smith did not suspend the county court's order, but, being void, left it in full force.

In the absence of the circuit judge from the county, the county judge may hear and grant or refuse motions for interlocutory injunctions of a prohibitory nature (section 273, Civ. Code Prac.). As Circuit Judge Cook was absent from Christian county when the application was made in the case of Renshaw against Smith, County Judge Prowse had jurisdiction to hear and determine the question whether the temporary injunction applied for in that case should be

granted. Nor did the fact that he had been joined as a defendant in a former action of Smith against Renshaw disqualify him from acting. His being joined in the other case was merely formal. He had no personal interest in it. Nor has he now any so far as this record intimates. The action of the respondent in granting the temporary writ of prohibition was beyond his jurisdiction, as he could not do so without invading the rightful jurisdiction of the county judge in the matter, conferred upon him by statute, so long as he was in the county and not disqualified from acting and the circuit judge was out of the county.

The respondent is directed to forthwith set aside his order prohibiting County Judge Prowse from trying the action for injunction in the action of Renshaw against Smith pending in the Christian circuit court, and the writ of prohibition prayed for in this application is granted.

HOBSON, J. (dissenting). The facts of the case are these: David Smith was elected sheriff of Christian county at the November election, 1905. He qualified and gave bond. In the fall of 1907 the fiscal court appointed Frank Rives as commissioner to settle with Smith as sheriff. Smith got his papers ready; but, before the settlement was made, Rives, who was a member of the State Senate, came to Frankfort to attend the session of the Legislature. He remained in Frankfort until the Legislature adjourned, something after the middle of March. Smith, being unable to get his settlement made, as Rives was absent, saw the county judge. A new act had been passed requiring a sheriff to have a quietus from the fiscal court. Smith could not get his quietus as the settlement had

not been made; so he went to the county judge, asking if he would allow him to renew his bond before he got his quietus. The county judge said "No," but he would give him time after the 1st of March to execute his bond. Smith, relying upon this statement of the county judge, was waiting until his settlement was made, so that he could get his quietus, when, without notice to him, the county judge made an order removing him from office, and appointing Renshaw in his place. When this was done, the bonds that Smith had given were amply good for all the liabilities which he was under and he was prepared on that day to execute a bond if he had been allowed to do so. The county judge denies that he told Smith what Smith says; but Smith is sustained by the oath of two bystanders and so, as the case stands, it must be concluded at least that Smith was misled by the county judge. In Mecham on Public Officers, section 454, after stating the rule as to offices held at pleasure, the learned author says: "But, on the other hand, where the appointment or election is made for a definite term or during good behavior, and the removal is to be for cause, it is now clearly established by the great weight of authority that the power of removal cannot, except by clear statutory authority, be exercised without notice and hearing, but that the existence of the cause, for which the power is to be exercised, must first be determined after notice has been given to the officer of the charges made against him, and he has been given an opportunity to be heard in his defense." In no state in the Union has this doctrine been maintained with more vigor than in Kentucky. In Page v. Harden, 8 B. Mon. 648, where the Governor had removed the Secretary of State without notice, the order was held void. This opinion was

followed in Todd v. Dunlap, 99 Ky. 460. 18 Ky. Law
Rep. 329, 36 S. W. 541, and was recognized in Stokes
v. Fitzpatrick, 1 Metc. 142, and Johnson v. Ginn Co.,
105 Ky. 654, 20 Ky. Law Rep. 1475, 49 S. W. 470. The
court undertakes to distinguish this case from those
cases cited by saying that failure to execute a bond
makes a vacancy in the office. Unfortunately for the
court the statute does not so provide. The statutes
now on the subject are the same as when the case
of Schuff v. Pflanz, 99 Ky. 97, 18 Ky. Law Rep.
25, 35 S. W. 132, was decided. This is shown
by the opinion by Judge Barker which is copied into
the opinion of the court. One section of the statute
provides that, on the failure of the sheriff "to exe-
cute bond and qualify as hereinbefore provided, he
shall forfeit his office." Another provision of the
statute is in these words: "It shall be the duty of the
county court to cause the sheriff, annually, to renew
his bond required by this chapter, and oftener, if the
court may deem proper; and upon his failure to do
so, the court shall enter up an order suspending him
from acting until he gives said bond, or the court
may vacate his office." With these two provisions
of the statute before it, this court in Schuff v. Pflanz
thus construed it: "Section 4143 provides: 'On the
failure of the sheriff to execute bond and qualify, as
hereinbefore provided, he shall forfeit his office.' The
right of forfeiture under this section is made to depend
upon his failure to qualify; and, by section 4130, he
is permitted to execute bond at any time before the
1st of January. Pflanz, as appears, did qualify in the
proper time, by giving bond satisfactory to the county
court, and entered upon the discharge of his duties,
but failed to execute his annual bond on or before
the first Monday in January, 1896, and it is main-

tained that the failure to execute this bond worked a forfeiture, and authorized the county judge to declare the office vacant.  Pflanz was still in the office of sheriff; had qualified with the execution of a bond that afforded ample protection to the State and the county for all the revenue that might come to his hands.  The securities on his bond at the date of his qualification bound themselves as such for and during the entire term of his office.  This bond, provided for by section 4133, was not for the collection and payment over of the revenue for the year 1895, but stipulates that 'We A. B., sheriff, and C. D. and E. F., his sureties, bind and obligate ourselves jointly and severally, to the Commonwealth of Kentucky, that the said A. B., sheriff shall faithfuly perform his duties,' etc.  And the next section (4134) empowers the county to require the sheriff to give an additional bond or bonds where the interest of the State or county demands it, and the sureties on all the bonds shall be jointly and severally liable for any default of the sheriff during the term in which said bond may be executed, whether the liability accrued before or after the execution of the bond or bonds.  These bonds are not taken for one year, but bind the sureties for any default during the term for which they may be executed; and it cannot well be said the sureties in these additional bonds are liable for the whole term and those on the original bond are liable for one year only.  So we have a case where the qualification has been perfect and complete and a statute providing only that a failure to execute bond and qualify shall forfeit the office.  Qualification means the execution of the bond, the oath of office.  The question then arises: If the sheriff fails to give this annual bond for the collection of the revenue, can the county judge

declare the office vacant? The sheriff is required to give two bonds—one for the collection of the revenue and the other known as the general official bond. Under the title of 'Sheriff' (section 4557) it is provided: 'It shall be the duty of the county court to cause the sheriff, annually to renew his bond required by this chapter, and oftener if the court may deem proper, and upon his failure to do so, the court shall enter up an order suspending him from acting until he gives said bond, or the court may vacate his office.' This statute should be construed in connection with the revenue statute, and it is manifest that a fair interpretation of the legislative meaning is that, upon the failure to execute any bond required of this official for the protection of the State, county, or citizen, the county court may remove him from office; and particularly where by statute it is made the plain duty of the official to execute the bond on a particular day. The duty then devolves on the sheriff and he must comply with the law; but it does not follow because the sheriff fails to renew his general bond or to give an annual bond for the collection of the revenue that the county judge is powerless to accept a bond after the first Monday in January. He may, it is true, vacate the office, but before he does this he accepts a bond that is in addition to or a new bond, upon which the last sureties became jointly liable with the sureties on the first bond. It is a bond sufficient to satisfy the court that all will be protected who are interested in its execution, and when accepted, the sheriff having previously qualified, it is then too late to enter an order vacating the office.''

The Legislature has since re-enacted the statute, and so must be conclusively presumed to have re-enacted it under the construction which it received

from this court. If the Legislature had been dissatisfied with the statute as construed by this court, it must be presumed that it would have changed it. Nothing can be plainer than that what we have quoted from Schuff v. Pflanz shows that the sheriff's office was not rendered ipso facto vacant or forfeited by his failure to execute the renewal bond. Smith did not fail to execute bond and qualify. As he had executed bond and qualified two years before this trouble arose, his whole failure here was to execute a renewal bond. The statute plainly recognizes that his office does not become vacant npon his failure to execute the bond; for the language is: "Upon his failure so to do the court may enter up an order suspending him from acting until he gives said bond, or the court may vacate his office." That the court has power under this statute to vacate his office is admitted; but that is a very different thing from saying that his office is vacant when he fails to execute his bond and before the court makes any order. The power of the court to vacate his office depends upon its jurisdiction over him. His office is not vacated until it is vacated by the court, and the court has no jurisdiction to make any order until it obtains jurisdiction over him by notice to him. I concede the doctrine that, where the statute so provides, an officer may be removed without notice, because he takes the office subject to this condition; but the statute in this case does not so provide. The county court is given a discretion. It may suspend the sheriff until he executes bond, which plainly implies that he may execute it after the time has passed in which it should have been given. The power given the county court to suspend the sheriff "from acting until he gives said bond" necessarily implies that the sheriff acts unless suspended; and,

as the statute confers upon the county court a dis-
cretion, manifestly the defendant must have notice
that he may show to the county court how that discre-
tion should be exercised.   The cardinal error of the
court is in this: That it overlooks the rule that the
officer is entitled to notice unless the statute expressly
otherwise provides.   The statute here not only does
not expressly or otherwise provide, but its provisions
show beyond controversy that it contemplates judicial
action by the county court, and judicial action cannot
be taken against any one unless he is before the court.
The case in hand well illustrates this.   Who can be-
lieve that any self-respecting county judge would
have removed a sheriff from office when the sheriff
proved to him by two witnesses that he had told
him that he could not execute his renewal bonds until
he got his quietus, and that he would give him time to
execute the bonds, and also showed him that he had
his sureties at hand and was prepared to give the
bonds?   Under the former statute the sheriff was re-
quired to execute his bonds by a certain time, and,
if he failed to execute his bonds, the office became
vacant.   The Legislature intentionally changed the
rule, and this court so declared in Schuff v. Pflanz.
The statute, which was then in force, having been
since re-enacted, should now receive the same con-
struction as was then given it by the court.

The case which Judge Cook had before him when
he granted the injunction now complained of was en-
tirely a different case from that before Judge Barker.
An appeal had been taken from the order of the
county court to the circuit court.  If the circuit court
had jurisdiction, the county judge had no authority to
make any orders in a matter that had been appealed
to the circuit court.  The county judge was a defend-

ant to Smith's suit, and was therefore not qualified to sit in the case in which he proposed to act. The circuit court made his order under facts which were not before Judge Barker at all. That an appeal may be taken to the circuit court under section 978, Ky. St. 1903, from an order of the county court vacating the office of a sheriff, depends upon whether the amount in controversy is over $50. The court draws a distinction between "amount" in controversy and "value" in controversy. This is too fine to be substantial. The meaning of the Legislature is the same. The only reason that "amount" is used the second time in place of "value" is that the writer wished to avoid tautology. There is no substantial difference in the sense. Under a precisely similar provision the United States Supreme Court has repeatedly sustained appeals. The question was fully discussed by the Supreme Court of West Virginia in the case of Dryden v. Swinburn, 15 W. Va. 246. Many authorities are collected in that opinion, and no contrary authority has been referred to. In Boyd Co. v. Ross, 95 Ky. 167, 15 Ky. Law Rep. 520, 25 S. W. 8, 44 Am. St. Rep. 210, an appeal was taken from the county court to the circuit court from an order approving a sheriff's bond, and from the circuit court it was brought to this court; this court taking jurisdiction and affirming the judgment of the circuit court, which had set aside the order of the county court. Certainly there is no distinction, so far as section 978 goes, between an order approving a sheriff's bond and an order removing a sheriff. If an appeal may be taken in one case because the amount in controversy is over $50, how can it be said that an appeal cannot be taken in the other, under the same statute? To say that the statute does not contemplate an appeal in such

cases is to beg the whole question; for there is nothing in the statute except the general provision, and a provision that in certain other cases appeals may be taken from the orders of the county court without regard to amount. The sheriff's sureties in his old bond continue bound, and, in order to appeal. he must execute a bond that he will perform the judgment of the court so there cannot possibly be any loss. The holding in the opinion that a circuit judge is bound by the opinion of a judge of this court where the facts are the same leads to some very peculiar conse. quences. If the circuit court does what he is required to do, his judgment cannot be reversed on appeal; for certainly it would not be held that a circuit court should do the vain thing of entering a judgment so that it might be reversed in the Court of Appeals. If the circuit court decides as he is bound to decide, his judgment is right and cannot be reversed by this court; but certainly the court does not mean that the opinion of one judge of this court would be binding upon this court, if the case, in the regular course of events, reaches this court. The rule has heretofore been that all decisions of the court on interlocutory motions were subject to be changed by the court in entering a final judgment. Thus it has been held that, if the court sustains or dissolves an injunction, he may, when he comes to enter his final judgment, dis- regard his order entered on the injunction, although made on a motion to dissolve the injunction on the whole case. The order of a judge of this court in dissolving an injunction granted by a circuit judge is of no more authority than a similar order made in the first place by the circuit court. The circuit judge may not in that action by an interlocutory order dis- regard the order of a judge of this court; but, when

he comes to enter his final judgment, this interlocutory order is no more binding on him than any other interlocutory order made in the case. See Matthews v. Rogers, 53 S. W. 413, 21 Ky. Law Rep. 905.

For these reasons, I dissent from the opinion of the court.

NUNN and SETTLE, JJ., concur in this dissent.